(79 South. 868)

Nos. 21210 and 21833.

FISCHER v. WELLS FARGO & CO.
EXPRESS et al.

(June 29, 1918.   Rehearing Denied Nov. 4,
1918.)

*(Syllabus by Editorial Staff.)*

1. LANDLORD AND TENANT ⊜⟹165(4)—INJURY
TO TENANT'S EMPLOYÉ—LIABILITY.

A lessor was not responsible for injury to
employé of tenant from the falling of a step-
ladder nailed to end of a platform, where ladder
was no part of leased premises, and was not
thereon when leased, or thereafter placed there
by any officers or employés, or known to any
officer of lessor.

2. MASTER AND SERVANT ⊜⟹106(1)—PERSON-
AL INJURY—SAFE PLACE FOR WORK.

Express company, whose leased premises in-
cluded a platform, etc., and which furnished an-
other safe, convenient, and intended entrance
and exit for its employés, was not liable to em-
ployé, injured from fall of stepladder nailed to
end of platform where there was no invitation
to use it as an exit, and it was not furnished or
placed by or with consent of company's officers
or superior servants.

Appeal from Civil District Court, Parish of
Orleans; Fred D. King, Judge.

Action by Albert G. Fischer against the
Wells Fargo & Co. Express and the Illinois
Central Railroad Company.   Judgment for
plaintiff against the Wells Fargo & Co. Ex-
press, and in favor of defendant Illinois
Central Railroad Company, and plaintiff and
the Wells Fargo & Co. Express appeal, and
on plaintiff's death his legal representatives
prosecuted his appeal.   Judgment for de-
fendant Illinois Central Railroad Company
affirmed, and judgment against Wells Fargo
& Co. Express annulled and suit dismissed.

Johnston Armstrong, of New Orleans, for
appellant Wells Fargo & Co. Express.   John
J. McCloskey and Malcolm J. Taylor, both of
New Orleans, for appellant Fischer.   Lemle
& Lemle, of New Orleans (Blewett Lee and
R. V. Fletcher, both of Chicago, Ill., of coun-
sel), for appellee Illinois Cent. R. Co.

O'NIELL, J.   This is an action for dam-
ages for personal injuries.   A stepladder that
was nailed to the end of a platform, on
which the plaintiff worked, came loose and
fell when he stepped upon it, and he suffered
serious injuries by the fall.   The express
company was the plaintiff's employer.   The
railroad company was the owner and lessor
of the premises occupied by the express
company, where the accident occurred.   The
action against the express company is found-
ed upon the doctrine of responsibility of the
master for failure to provide a safe place of
employment for the servant; and the action
against the railroad company is founded
upon the provisions of the Civil Code, to the
effect that the owner of a building is respon-
sible for injuries resulting from his failure
to keep it in repair.   Judgment was rendered
against the express company for $7,500;
the demand against the railroad company be-
ing rejected.   The plaintiff and the express
company both appealed.   Thereafter the
plaintiff died, and his legal representatives
are prosecuting the appeal taken by him.

There is no doubt or dispute about the
important facts of the case.   The platform
from which the plaintiff stepped and fell
was about four feet high; the top of the lad-
der being a few inches lower.   The approach
from the street to the platform was by way
of an incline, intended apparently for both
pedestrians and wagons.   A railroad track
extended along the opposite side of the plat-
form and into a private park of the railroad
company, which was not leased to the express
company.   The end of the platform, on which
the stepladder was nailed, also abutted on
the private park.   The employés of the ex-
press company were neither forbidden nor ex-
pressly permitted to go through the private
park to and from their work, and they gen-
erally used that route.   Some of the railroad
employés, working on or about the private
cars in the park, also went to and from their

work by way of a paved walk leading to the premises occupied by the express company. As a matter of convenience, therefore, some one nailed the stepladder to the end of the platform, and it had been there, used habitually by employés of the express company and of the railroad company, for several months before the accident. No one who testified in the case knew who had put the ladder there. · It has the appearance of a discarded one of the stepladders used by porters on passenger coaches; and the supposition of a number of the witnesses was that one of the employés of either the railroad company or express company nailed the ladder to the end of the platform as a matter of convenience to himself and other employés. It was in an obscure place, beside some shrubbery; and no officer of either company, nor employé having greater authority than the plaintiff had, knew the ladder was there. The plaintiff's work was to load and unload express cars placed beside the platform. He had been working during the night before the accident, and finished a few minutes before 6 o'clock in the morning. The route to his home was about 50 or 75 feet shorter through the park than by way of the street; and, as was his custom, he intended to take the shorter route. When he stepped from the platform to the top step of the ladder, the nails that held it to the end planks of the platfrom gave way and it fell to the ground with him. There is some testimony to the effect that the boards where the lad-

der was nailed had rotted; but that is contradicted, and the most plausible theory, from the evidence before us, is that the ladder was not nailed securely enough for the nails to hold.

[1] The railroad company is not responsible for the accident, because the ladder formed no part of the leased property, and was not even on the premises when the lease was made, and there is no proof that it was put there afterwards by any officer or employé of the railroad company.

[2] Nor do we find any basis for the judgment against the express company. As far as the evidence shows, the ladder was not furnished nor put in place by or with the knowledge of any officer or superior servant of the express company. The latter furnished a safe and convenient way for the employés to go to and from their work. That was by way of the incline extending to or towards the street, and that was the proper route—the only route provided or intended—for the employés to go to and from their work. There was no invitation, express or implied, for any employé of the express company to go through the private park of the railroad company; hence no duty, on the part of the express company, to furnish a safe means of getting down from the platform into the park.

The judgment in favor of the railroad company is affirmed, and the judgment against the express company is annulled, and the suit dismissed, at the cost of the plaintiffs.